FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

|   |   |
|---|---|
| In re | Case No.  23-90021-E-7 |
| MARTHA ISIDRO MENDOZA, | |
| Debtor. | |
| MARTHA ISIDRO MENDOZA, | Adv. Proc. No.  24-9005 |
| Plaintiff, | Docket Control No. DPL-1 |
| v. | |
| FRANCHISE TAX BOARD, a California political subdivision; DOES 1 through 20, inclusive, | |
| Defendants. | |

**MEMORANDUM OPINION AND DECISION[1]**

**GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT FOR DEFENDANT CALIFORNIA FRANCHISE TAX BOARD AND AGAINST PLAINTIFF-DEBTOR MARTHA MENDOZA ON THE FIRST AND THIRD CLAIMS FOR RELIEF STATED IN THE COMPLAINT (Dckt. 1)**

Plaintiff-Debtor Martha Mendoza commenced this Adversary Proceeding by filing a Complaint for determination of tax liability owed to the California Franchise Tax Board

---

[1]  Though this Decision is long and detailed, the court publishes it in light of the few decisions that cite to *Berkovich v. Cal. Franchise Tax Board (In re Berkovich)*, 15 F.4th 997 (2021), and the impact it may have with respect to tax debts owed by less sophisticated consumer debtors.  How these nondischargeability provisions for tax debt are applied may warrant additional thought, discussion, and Congressional action.

("Defendant-FTB"),[2] disallowance of the Defendant-FTB Claim, and to determine the nature, extent, and validity of the liens asserted by Defendant-FTB as part of its Proof of Claim (Plaintiff-Debtor's Chapter 7 Bankruptcy Case 23-90021, Proof of Claim 5-1 ("Defendant-FTB Claim")).  Complaint; Dckt. 1.  Defendant-FTB filed its Answer (Dckt. 8) admitting and denying specific allegations in the Complaint.  Defendant-FTB's Answer includes the defense that federal court jurisdiction does not exists to determine the amount of a nondischargeable state tax liability in the Plaintiff-Debtor's no-asset Chapter 7 case (Answer, ¶¶ 1, 2, 3, and First Affirmative Defense; Dckt. 8).

Defendant-FTB filed a Motion for Partial Summary Judgment on March 4, 2025, which requests the court grant partial summary judgment in favor of Defendant-FTB on the First Claim for Relief (Dischargeability) and the Third Claim for Relief (Determine Nature, Extent and Validity of Liens) of the Complaint.  Motion for Partial Summary Judgment; Dckt. 28.  Defendant-FTB also filed on March 4, 2025, a second motion in which the FTB requests an order dismissing or having the court abstain from determining the Second Claim for Relief (Disallowance of Defendant-FTB Claim) and the Fourth Claim for Relief (Declaratory Relief) in the Complaint.  Motion to Dismiss or Abstain; Dckt. 39.

If the court were to grant the two Motions, then all of the issues in this Adversary Proceeding would be concluded.

### REVIEW OF MOTION
### FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION

Defendant-FTB moves this court for an order granting partial summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056 which incorporates Federal Rule of Civil Procedure 56 therein.  Defendant-FTB seeks partial summary judgment for Counts One and Three of Plaintiff-Debtor's Complaint.  Defendant-FTB has filed its Motion For Partial Summary Judgment (Dckt. 28), and a Memorandum of Points and Authorities (Dckt. 32), the Declarations of

---

[2]  In this Decision, when referring to the California Franchise Tax Board as a party to this Adversary Proceeding, the court uses the term "Defendant-FTB."  When referring to the California Franchise Tax Board in other reported decisions or discussing such other decisions, the court uses the term "Franchise Tax Board" in an effort help distinguish addressing the issues for this Motion from holdings in other courts.

1   Mui Dang (Dckt. 30), Rebecca Keller (Dckt. 33), and Donny P. Le (Dckt. 34), Exhibits 1-12 (Dckts.

2   36-37), and a Statement of Undisputed Facts (Dckt. 35).

3        In the Motion and Points and Authorities ("P&As"), Defendant-FTB states the grounds and

4   legal authorities for entry of partial summary judgment for Defendant-FTB  on Counts One and

5   Three in the Complaint, which include:

6        State Income Taxes Assessed, Nondischargeable

7        A.   On January 20, 2023, Plaintiff-Debtor filed Chapter 7 Bankruptcy Petition with this
             Court, thereby commencing her Chapter 7 Bankruptcy Case, No. 23-90021.  P&As,
8            p. 6:8-10.

9        B.   Defendant-FTB filed its timely proof of claim (Proof of Claim 5-1), asserting a
             secured claim of ($155,528.75) for the 2012 Tax Year and ($378,935.00) for the
10           2013 Tax Year, excluding interest and penalties.  *Id.*; p. 6:11-13.

11       C.   The Chapter 7 Trustee filed a Report of No Distribution in the Debtor's Chapter 7
             Bankruptcy Case.  *Id.*; p. 6:13-14.
12

13       D.   Plaintiff-Debtor received her discharge in her Chapter 7 Bankruptcy Case on May
             2, 2024, and the Chapter 7 Bankruptcy Case was closed on May 25, 2023.  *Id.*; p.
             6:15-16.
14

15       E.   Prior to filing the Chapter 7 Bankruptcy Case, the Plaintiff-Debtor filed a Petition in
             the United States Tax Court challenging the additional income the IRS had included
16           in Plaintiff-Debtor's 2012 and 2013 tax returns, which resulted in the IRS assessing
             additional Federal taxes being owed by Debtor.  Motion, p. 2:3-6.  As exhibits to the
             petition in the United States Tax Court, the Plaintiff-Debtor included as:
17

18           1.   Notice of Deficiency and Income Tax Examination Changes for the 2012 and
                  2013 tax years.  *Id.*; 2:6-8.
19

20           2.   In the Notice of Deficiency the IRS set forth a proposed increase in income
                  for Plaintiff-Debtor for the 2012 tax year of $1,388,543, and for the 2013 tax
                  year of $3,062,173, based on  "Community Property - ½ From Spouse."  *Id*;
21                p. 7:8-11.

22   A Certified Copy of Plaintiff-Debtor's Petition filed in the Tax Court, with the Notice of Deficiency

23   and Income Tax Examination Changes attached, is filed as Exhibit 4; Dckt. 36.  The Petition states

24   that Plaintiff-Debtor asserted that the amounts assessed were the gross income for that time period

25   and did not take into account any of the costs and expenses relating to such income.  *Id.*; Petition,

26   ¶ 5.  As addressed below, no other grounds were stated in the Petition filed in Tax Court.

27       F.   The Plaintiff-Debtor and the IRS stipulated to the entry of a Tax Court Decision
             which upheld the IRS assessments of the additional taxes for the 2012 and the 2013
28           tax years which were based on the additional income for those years being included

1    as income for the Debtor for the 2012 and 2013 tax years.  P&As, p. 7:12-21; Dckt. 32.

2

3   A Certified Copy of the Tax Court Decision is filed as Exhibit 6, Dckt. 36.

4        G.    Plaintiff-Debtor was required by California Law,  California Revenue and Taxation Code § 18622(a) to report to Defendant-FTB the changes or corrections made by the Internal Revenue Service ("IRS") to her 2012 and 2013 Federal income tax returns. Motion, p. 2:6-8; Dckt. 28.

5

6

7        H.    Though required by Revenue and Taxation Code § 19622(a), Plaintiff-Debtor never reported to Defendant-FTB the changes or corrections made by the IRS to Plaintiff-Debtor's 2012 and 2013 Federal income tax returns. *Id*.; p. 2:8-9.

8

9        I.    On July 20, 2018, Defendant-FTB completed its examination of the IRS changes to the income for the 2012 and 2013 tax years, and timely issued notices of assessment of additional State income taxes based on that additional income for the 2012 and the 2013 tax years.  If a challenge is not filed by the tax payer to such an assessment within 60 days of the assessment notice being mailed, the assessment of the tax obligation becomes final; citing to Revenue and Taxation Code  §§ 19041 and 19042. P&As, p. 8:18-24, p. 13:9-12; Dckt. 32.

10

11

12

13       J.    Plaintiff-Debtor did not challenge Defendant-FTB's assessment of the additional tax obligations for the 2012 and 2013 tax years. *Id*.; 13:14-16.

14       K.    The Ninth Circuit Court of Appeals, *Berkovich v. Cal. Franchise Tax Board (In re Berkovich)*, 15 F.4th 997 (2021), determined that the report required by Revenue and Taxation Code  §  18622(a) is an "equivalent report or notice" within the meaning  11  U.S.C.  §  523(a)(1)(B)  for  determining  that  a  tax  debt  is nondischargeable. Motion, p. 2:9-11; Dckt. 28.

15

16

17       L.    Because Plaintiff-Debtor was required to file reports with Defendant-FTB of the changes to the 2012 and 2013 Federal Taxes and because the undisputed facts demonstrate that Mendoza failed to do so, the tax and interest on tax owed by Mendoza to Defendant-FTB for tax years 2012 and 2-13 are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(B)(i). *Id*.; p. 2:12-14.

18

19

20   State Tax Lien

21       M.    Defendant-FTB has a valid and enforceable State tax lien for the 2012 and 2013 tax year obligations pursuant to Revenue and Taxation Code § 19221(a) and California Government Code § 7170. *Id*.; p. 2:15-19.

22

23       N.    After providing the required notices to Plaintiff-Debtor, Defendant-FTB recorded a notice of State Tax Lien, thereby perfecting its lien. *Id*.; p. 2:19-20.  Even if the Debtor were to obtain a discharge of the tax obligation, that does not invalidate the tax lien, which can be enforced against the property it encumbers; citing to *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992), and *Johnson v. Home State Bank*, 501 U.S. 78, 83-84 (1991).  *Id*.; 2:20-25.  Defendant-FTB provides the following quote from *Johnson*, "Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while  leaving intact another—namely, an action against the debtor *in rem*."

24

25

26

27

28   ///

4

1    Statement of Undisputed Facts

2          Defendant-FTB provides its Statement of Undisputed Facts, each of which are cross

3    referenced to the evidence submitted in support thereof, in support of the factual allegations

4    summarized above by the court.  Dckt. 35.

5    Declarations

6          For the Declarations filed in support of the Motion for Partial Summary Judgment, the

7    testimony includes the following.  In the first Declaration, Mui Dang testifies as to the nature of the

8    process of sharing tax information between the IRS and the Defendant-FTB. Decl.; Docket 30.  Mui

9    Dang testifies:

10         1.     On November 8, 2017, IRS provided Defendant-FTB with the final Revenue
                  Agent's Reports (RARs) for Plaintiff-Debtor related to the IRS's adjustments
11                to Plaintiff-Debtor's federal income tax returns for taxable years 2012 and
                  2013.  *Id.* at ¶ 12.
12
           2.     On June 19, 2018, Defendant-FTB requested and IRS provided to Defendant-
13                FTB the Account Transcripts for Plaintiff-Debtor for taxable years 2012 and
                  2013 which show that the IRS made additional tax assessments by
14                examination for those tax years on June 20, 2017.  *Id.* at ¶ 13.  Mui Dang
                  authenticates this Exhibit at Exhibit 9.  Mui Dang further authenticates
15                Exhibits 10 and 11.

16         In the second Declaration, Rebecca Keller authenticates exhibits 7, 8, 10, and 11.  Rebecca

17   Keller also provides testimony as to how the Defendant-FTB assessed Plaintiff-Debtor's taxes for

18   the years 2012 and 2013, relying on the IRS' information.  Decl. ¶ 14, Docket 33.

19         Finally, Donny P. Le, Esq., in his Declaration authenticates Exhibits 1, 2, 3, 4, 5, 6, 9, and

20   12. Decl.; Docket 34.

21   **Plaintiff-Debtors's Opposition**

22         Plaintiff-Debtor filed Opposition Pleadings March 27, 2025.  Dckts. 47-51.  The opposition

23   is set forth in the Memorandum of Points and Authorities ("Opposition") filed by Plaintiff-Debtor.

24   Dckt. 51.

25   Opposition

26         The court provides the following summary of quotations from the Opposition grounds as set

27   forth by the Plaintiff-Debtor:

28         A.     "The Internal Revenue Service (IRS) assessed taxes for the years of 2013 and 2012

                                              5

against the business of her ex-spouse. The [Plaintiff-Debtor] was not involved with her ex-spouse's business and filed separate tax returns for the years 2012 and 2013." Opposition, p. 2:18-20; Dckt. 51.

B.  "The IRS proof of claim for 2012 and 2013 was based on income from her ex-spouse's business. Her ex-spouse had been scheduled to attend an IRS audit but did not appear. The IRS had copies of his bank records for 2012 and 2013. Based on her ex-spouse's failure to appear, the IRS assessed one-half of Arrendondo's [sic.][3] gross business income from his used car sales in 2012 to the [Plaintiff-Debtor]. Arrendondo' s used car business was not a community property asset." *Id*.; p. 2:24-28.

C.  "The [Plaintiff-Debtor] was married on February 17, 2008 and separated on September 1, 2010. The [Plaintiff-Debtor]'s ex-spouse was in the business of buying and selling used cars. The income of her spouse, Robert Arrendondo, was his separate property. However, the IRS erroneously assessed one-half of his gross income to the [Plaintiff-Debtor]." *Id*.; p. 3:1-4.

D.  "In calculating the tax liability, the IRS did not account for the cost and operating expenses of the vehicles. For this reason, from the beginning the tax liability assessment of the IRS was grossly overstated." *Id*.; p. 3:4-6.

E.  "The [Plaintiff-Debtor] filed her separate individual tax returns for 2012 and 2013 with the Franchise Tax Board (540) and IRS (1040)." *Id*.; p. 3:7-8.

F.  "The [Plaintiff-Debtor] properly filed her individual tax returns. At no time did the [Plaintiff-Debtor] consent or agree to file a joint tax return with her ex-spouse for the 2012 or 2013 tax years." *Id*.; p. 3:11-12.

G.  "On March 29, 2023 [Defendant-FTB] filed its own Proof of Claim. [Defendant-FTB] arbitrarily adopted the assessments contained in the IRS' s proof of claim as if the IRS' s assessment was accurate. It was not. As a result, [Defendant-FTB] capriciously claimed the [Plaintiff-Debtor] owed State taxes-which is not true-and claimed she owed [Defendant-FTB] a sum which was inaccurate to begin with." *Id*.; p. 3:13-17.

H.  "The IRS tax claim was discharged. However, [Defendant-FTB] continues to assert their tax liabilities should not be discharged, even though its claim is in all respects identical to the IRS's proof of claim." *Id*.; p. 3:22-24.

I.  "The tax dispute concerns the 2012 and 2013 tax periods when the [Plaintiff-Debtor] was separated from Roberto Arrendondo. (Decl., Martha Isidro Mendoza, ¶ 5; Dckt. 48.) The [Plaintiff-Debtor] filed her personal tax returns on August 28, 2025 as Head of Household without Roberto Arrendondo. (*Id.*) The date of her separation was September 1, 2010. (*Id.*, 6.)." *Id*.; p.4:25-28.

J.  "A triable issue of fact exists whether the [Plaintiff-Debtor] was correctly assessed the tax claimed by [Defendant-FTB]. The tax debt is disputed since the separate income of Robert Arrendondo was erroneously assessed against Martha Isidro Mendoza. Consequently, [Defendant-FTB] incorrectly assessed the separate property

---

[3] It appears that there was a clerical error in spelling Mr. Arredondo's last name. The court will not identify each such clerical error with a "[sic]" designation.

1    of Robert Arrendondo to the [Plaintiff-Debtor]." *Id.*; 5:7-10.

2    K.    "The Franchise Tax Board asserts a secured claim for its tax liens. The Franchise tax
           Board maintains that pursuant to California Revenue and Taxation § 19221(a) and

3          California Government Code § 7170, the amounts assessed against Mendoza in the
           2012 NPA and the 2013 NP A became perfected and enforceable state tax liens on

4          September 18, 2018. (Keller Decl., ¶ 17; *see also* Cal. Rev. & Tax. Code § 19221(a);
           Cal. Gov't Code § 7170.)  A triable issue exists whether the Franchise Tax Board

5          possesses a valid tax lien.

6                 A triable issue exists on the secured status of the Franchise Tax Board. On
           March 16, 2018, the IRS recorded its own tax lien. IRS tax lien has priority over the

7          [Defendant-FTB] tax lien no equity in the assets of Mendoza exist in favor of FTB.
           Because the IRS lien has priority over the lien of [Defendant-FTB], the available

8          equity in the lien is wiped out." *Id.*; p. 5:14-23.

9    L.    The Plaintiff-Debtor disputes that she signed the Petition to commence the
           proceedings in the Tax Court. *Id.*; p. 6:1-16.

10

11   Plaintiff-Debtor's Declaration

12        Plaintiff-Debtor testifies in her Declaration in support of the Opposition, which the court

13   summarizes below:

14   1.    The tax dispute for the years 2012 and 2013 were largely assessed against her
           for a one-half interest in community property with her ex-spouse, Roberto

15         Arredondo, resulting from income taxes owned by Mr. Arredondo running
           a business.  The property was solely Mr. Arredondo's and was improperly

16         assessed against Plaintiff-Debtor.  Decl. ¶ 12; Dckt. 48.

17   2.    Plaintiff-Debtor and Mr. Arredondo were separated in 2010 so the property
           in question could not have been community property.  *Id.* at ¶ 6.

18

19   3.    Plaintiff-Debtor does not recognize the Tax court Decision and testifies she
           never signed any of the documents in that case.  *Id.* at ¶ 13.

20   4.    Plaintiff-Debtor has never had a trial on the merits of her tax liability she
           allegedly owes.  *Id.* at ¶ 16.

21

22   5.    Plaintiff-Debtor was never made aware of the reporting requirement of
           Revenue and Taxation Code § 18622(a) by Defendant-FTB or IRS.  This is

23         a violation of her due process.  *Id.* at ¶¶ 19, 20.

24   6.    The IRS reported to Defendant-FTB the change in assessment, so the
           requirements of Revenue and Taxation Code § 18622(a) have been met and

25         the debt is not excepted from discharge.  *Id.* at ¶ 23.

26        The Plaintiff-Debtor's ex-husband, Robert Arredondo, submits a Declaration in support of

27   the Opposition, whose testimony the court summarizes as follows:

28   1.    He and Plaintiff-Debtor were married on February 17, 2008, and separated

                                             7

in 2010 with the intent of terminating the marriage.  The marriage was subsequently terminated on June 20, 2017.  Decl. ¶ 2; Dckt. 49.

2.    Mr. Arredondo testifies that for the years 2012 and 2013 he operated his business, Arredondo's Auto Sales, which he started in 2012.  He states that the business income for 2012 and 2013 were his separate property.  *Id.*; ¶ 3.

3.    The Plaintiff-Debtor was not involved in his car business in 2012 and 2013, or any subsequent years.  *Id.*; ¶ 4.

4.    The IRS income adjustment for 2012 and 2013 only takes into account gross income, and does not include the necessary operating costs and expenses.  The IRS income adjustment for 2012 and 2013 is grossly overstated and is not correct.  *Id.*; ¶ 5.

5.    Mr. Arredondo is working on filing amended returns for the years 2012 and 2013.  *Id.*; ¶ 8.

Response to Statement of Undisputed Facts

Plaintiff-Debtor has filed a Response to the Defendant-FTB's Statement of Undisputed Facts.  Dckt. 47.  In the Response the Plaintiff-Debtor admits or denies that the asserted fact is undisputed.  The asserted Undisputed Facts which Plaintiff-Debtor disputes are:

A.    Undisputed Fact 10

The Tax Court Action

10.    On May 10, 2016, Mendoza filed a petition in the United States Tax Court (the "Tax Petition"), thereby commencing the action "*Martha Isidro Mendoza, Petitioner v. Commissioner of Internal Revenue, Respondent,*" Docket No. 11226-16 (the "Tax Court Action"). (Le Decl., ¶ 4, Exhibit 1; Le Decl., ¶ 9, Exhibit 4; Request for Judicial Notice (RJN), ¶ 1.)

1.    This Fact is stated to be admitted in part and denied in part, with the court directed to read Paragraphs 9-14 of Plaintiff-Debtor's Declaration. Response, p. 3:17-26; Dckt. 47.

a.    In these paragraphs the Plaintiff-Debtor testifies that she received a notice of deficiency for the 2012 and 2013 tax years based on the gross income of Roberto Arredondo for the car sales business.  She recounts engaging the services of a person she believed to be an attorney (but now believes to be a paralegal) to assist her in writing a letter to the IRS.

///

///

///

8

Plaintiff-Debtor also testifies that the signature on the Petition filed with the Tax Court does not include the name "Mendoza," [4] that the signature is not hers, and she does not recognize the document. Further, that the IRS computation of any increased income from the car sale business is incorrect because it is the gross income.

Plaintiff-Debtor further testifies that she does not recognize the signature that "purports to be her signature" on the Tax Court Decision. She further testifies that she has not been provided a trial on the merits on the issue of whether the income from the car sales business should be allocated to her.

B.     Undisputed Fact 15

15.     Mendoza signed a stipulation on February 10, 2017 in which the parties "stipulated that the Court may enter the foregoing decision [the Tax Court Decision] in this case." (Le Decl., ¶ 9; and Exhibit 6, Exhibit Index Vol. 1, at p. 85; Dckt. 36.)

1.     Plaintiff-Debtor denies this is an undisputed fact, directing the court to read paragraphs 9-14 of Plaintiff-Debtor's Declaration. Response, ¶ 15; Dckt. 47.

a.     As discussed above, among other things, Plaintiff-Debtor disputes that the signature on the Petition filed in Tax Court and her signature that is part of the Tax Court Decision are Plaintiff-Debtor's.

C.     Undisputed Fact 17

17.     The deficiencies in income tax due ordered and decided in the Tax Court Decision are identical to those at issue in the Petition including the attached Notice of Deficiency and Form 4529-A. Compare Exhibit 6 (amounts of deficiency in income tax due for 2012 and 2013 (Exhibit Index Vol. 1, at p. 84)) and Exhibit 4 (calculation of "Balance Due or (Overpayment)" in Line 16 of Form 4529-A (Exhibit Index Vol. 1, at p. 19)).

1.     Plaintiff-Debtor denies in part and admits in part the asserted Undisputed Fact 15, directing the court to read Paragraphs 9-18 of the Plaintiff-Debtor's

_____

[4] Plaintiff-Debtor has provided as Exhibits a certified copy of the Petition for Dissolution of the Marriage that is dated December 14, 2016. Exhibit 1; Dckt. 50. While Plaintiff-Debtor is identified as "Martha Isidro Mendoza," bringing the dissolution action in *pro se*, in the Caption (*Id.* at 4), she signed the Petition for Dissolution of Marriage as "Martha Isidro" (*Id.* at 6). This is the same "signature name" "Martha Isidro" as on the Petition filed in the Tax Court on May 10, 2016, which lists Plaintiff-Debtor as the Petitioner in the caption of the Petition with the name "Martha Isidro Mendoza" Exhibit 4; Dckt. 36 at 13, 12.

Plaintiff-Debtor has provided additional documents filed in the Dissolution Action as Exhibit 1, Dckt. 50, in which Plaintiff-Debtor signed the following documents "Martha Isidro:" (1) Request to Waive Court Fees, *Id.* at 7; (2) Declaration of Disclosure, *Id.* at 11; (3) Declaration Under Uniform Child Custody Jurisdiction and Enforcement Act, *Id.* at 15; (4) Income and Expense Declaration, *Id.* at 17; and (5) Confidential Declaration, *Id.* at 23. Exhibit 2 filed by Plaintiff-Debtor is the Request to Enter Default in the Dissolution Action that is signed "Martha Isidro" four times. Dckt. 50 at 27-28.

Declaration. Response, ¶ 17; Dckt. 47.

    a.    It is not clear how in Paragraphs 9-18 Plaintiff-Debtor is disputing the consistency of the information in the IRS Notice of Deficiency and the Tax Court Decision documents referenced in Undisputed Fact 17.

D.    **Undisputed Fact 30**

    30.    Prior to June 20, 2018, the date in which Defendant-FTB mailed the 2012 NPA [Notice of Proposed Assessment] and the 2013 NPA to Mendoza, Defendant-FTB had no record that Mendoza ever filed a report, notification, or amended return with Defendant-FTB of the changes or corrections from the IRS related to the increase of her taxable income for the taxable years 2012 and 2013 and conceded the accuracy of the IRS determination or state wherein it was erroneous as required by California Revenue and Taxation Code § 18622(a). (Keller Decl. ¶ 15; see also Cal. Rev. & Tax. Code § 18622(a).)

    1.    Plaintiff-Debtor denies in part and admits in part the asserted Undisputed Fact 30, directing the court to read Paragraphs 9-23 of the Plaintiff-Debtor's Declaration. Response, ¶ 30; Dckt. 47.

    a.    Plaintiff-Debtor disputes the accuracy of the IRS assessment and asserts that she has not had any opportunity to adjudicate such an issue. She states that she has never been informed of any requirement to give a report or notice to Defendant-FTB concerning the IRS adjustments to her 2012 and 2013 Federal tax returns. Decl., ¶ 19; Dckt. 48.

E.    **Undisputed Fact 31**

    31.    Defendant-FTB has no record of ever receiving a protest from Mendoza on either the 2012 NPA or the 2013 NPA. (Keller Decl. ¶ 16.)

    1.    Plaintiff-Debtor denies in part and admits in part the asserted Undisputed Fact 30, directing the court to read Paragraphs 15, 19-21 of the Plaintiff-Debtor's Declaration. Response, ¶ 31; Dckt. 47.

    a.    Plaintiff-Debtor testifies that she has no knowledge of, and was not notified of any obligation that any reports or notices to Defendant-FTB. Plaintiff-Debtor has not been afforded the opportunity to challenge the assessment of taxes by Defendant-FTB. Decl., ¶¶ 19-21; Dckt. 48.

F.    **Undisputed Fact 33**

    33.    Pursuant to California Revenue and Taxation § 19221(a) and California Government Code § 7170, the amounts assessed against Mendoza in the 2012 NPA and the 2013 NPA became perfected and enforceable state tax liens on September 18, 2018. (Keller Decl. ¶ 17; see also Cal. Rev. & Tax. Code § 19221(a); Cal. Gov't Code § 7170.)

1.     Plaintiff-Debtor disputes this fact, stating that on March 16, 2018 the IRS recorded its tax lien, which tax lien has priority over any tax lien asserted by Defendant-FTB since the IRS tax lien would exhaust all value in the Plaintiff-Debtor's assets. The court is directed to read Paragraphs 17-19 of the Plaintiff-Debtor's Declaration. Response, ¶ 33; Dckt. 47.

      a.     Paragraphs 17-19 of the Plaintiff-Debtor's Declaration (Dckt. 48) discuss the assessment of taxes, Plaintiff-Debtor not being notified of having to file a report or notice, and that tax liability to the IRS has been discharged through Plaintiff-Debtor's Bankruptcy Case.

**G.    Undisputed Fact 34**

34.    The state tax liens attached "to all property and rights to property whether real or personal, tangible or intangible, including all after-acquired property and rights to property" belonging to Mendoza. (Cal. Rev. & Tax. Code § 19221(a); Cal. Gov't Code § 7170.)

1.     Plaintiff-Debtor denies this asserting that since the IRS tax lien has priority over Defendant-FTB's tax lien, there is no value to secure any tax lien for Defendant-FTB. The court is directed to read Paragraphs 14-21 of the Plaintiff-Debtor's Declaration. Response, ¶ 34; Dckt. 47.

      a.     While alleging that there is no value for a tax lien held by Defendant-FTB, no testimony is provided as to the value of the Plaintiff-Debtor's assets. In these paragraphs, Plaintiff-Debtor disputes having such an obligation, and asserts that she has never received any notice that she would have to respond or provide notice to Defendant-FTB.

**H.    Undisputed Fact 36**

36.    As of March 4, 2025, the amount of tax and interest on tax owed by Mendoza to Defendant-FTB as a result of the 2012 NPA is $257,922.43, with interest continuing to accrue from and after that date. (Keller Decl. ¶ 18.)

1.     The Plaintiff-Debtor disputes that there is any tax liability, asserting that income of Robert Arredondo was erroneously assessed against Plaintiff-Debtor. It is asserted that any income of Robert Arredondo in 2012 and 2013 was his separate income, Plaintiff-Debtor and Mr. Arredondo having separated September 23, 2010. The court is directed to read Paragraphs 9-23 of the Plaintiff-Debtor's Declaration. Response, ¶ 36; Dckt. 47.

      a.     It is clear that Plaintiff-Debtor disputes owning any tax obligations for 2012 and 2013 based on the income generated from Robert Arredondo's business.

**I.    Undisputed Fact 37**

37.    As of March 4, 2025, the amount of tax and interest on tax owed by Mendoza to Defendant-FTB as a result of the 2013 NPA is $608,535.78, with interest continuing to accrue from and after that date. (Keller Decl. ¶ 19.)

1.      The Plaintiff-Debtor disputes owning any tax obligations from the business operated by Robert Arredondo and that any allocation of income by the IRS to her was in error. The court is directed to read Paragraphs 9-23 of Plaintiff-Debtor's Declaration. Response, ¶ 37; Dckt. 47.

## APPLICABLE LAW
### Summary Judgment

In an adversary proceeding, summary judgment is proper when "[t]he movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), incorporated by Fed. R. Bankr. P. 7056. The key inquiry in a motion for summary judgment is whether a genuine issue of material fact remains for trial. Fed. R. Civ. P. 56(c), incorporated by Fed. R. Bankr. P. 7056; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986); 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.11[1][b] (3d ed. 2000). "[A dispute] is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute [over a fact] is 'material' only if it could affect the outcome of the suit under the governing law." *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine dispute of material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To support the assertion that a fact cannot be genuinely disputed, the moving party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A), incorporated by Fed. R. Bankr. P. 7056.

In response to a sufficiently supported motion for summary judgment, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine dispute for trial. *Barboza*, 545 F.3d at 707, citing *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055–56 (9th Cir. 2002). The nonmoving party cannot rely on allegations or denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery materials, to show that a dispute exists. *Id.* (citing *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

1    *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

2    In ruling on a summary judgment motion, the court must view all of the evidence in the light

3    most favorable to the nonmoving party. *Barboza*, 545 F.3d at 707 (citing *County. of Tuolumne v.*

4    *Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001)). The court "generally cannot grant

5    summary judgment based on its assessment of the credibility of the evidence presented." *Agosto v.*

6    *INS*, 436 U.S. 748, 756 (1978). "[A]t the summary judgment stage [,] the judge's function is not

7    himself to weigh the evidence and determine the truth of the matter[,] but to determine whether there

8    is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

9                                                **DECISION**

10    In addressing the Motion for Partial Summary Judgment in which Defendant-FTB requests

11    judgment in its favor on the First and Third Claims for Relief, the court begins by addressing

12    whether there are disputed facts for which a trial is required. After considering the law, the facts

13    presented, the undisputed facts, and the disputed facts, the court concludes that there are no facts in

14    dispute for which partial summary judgment cannot be entered.

15    It is undisputed that there is a Tax Court Decision which determines that Plaintiff-Debtor has

16    additional income for the 2012 and the 2013 tax years. A copy of that Tax Court Decision is

17    provided as Exhibit 6 (Dckt. 36). Plaintiff-Debtor seeks to challenge (collaterally attack) this Tax

18    Court Decision, asserting that she was not a party to that Tax Court Proceeding, that she did not sign

19    the Tax Court Petition, and that she did not sign the Tax Court Decision to which a Stipulation is

20    attached.

21
22                              **FIRST CLAIM FOR RELIEF**
                  **DETERMINATION OF DISCHARGEABILITY OF TAX DEBT**

23    The court begins its analysis with the Bankruptcy Code section under which Defendant-FTB

24    asserts that the assessed tax obligations for the 2012 and 2013 tax years are nondischargeable. The

25    Bankruptcy Code provides for the nondischargeability of specified tax debts in 11 U.S.C.

26    § 523(a)(1), which states [emphasis added]:

27         (a)A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this
           title does not discharge an individual debtor from any debt—
28

**(1)for a tax** or a customs duty—

    (A)of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

    **(B)with respect to which a** return, or **equivalent report or notice**, if required—

        (i) **was not filed or given**; or

        (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

    (C)with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

Subsections (A), (B), and (C) of 11 U.S.C. § 523(a) are linked with the disjunctive conjunction "or," and stand as independent grounds for a tax debt being nondischargeable. Therefore, any one of those subsections would except a debt from discharge. Importantly, Plaintiff-Debtor focuses on 11 U.S.C. § 523(a)(1)(B)(ii) in support of First Claim for Relief in finding the debt was discharged, and Defendant-FTB directs the court to 11 U.S.C. § 523(a)(1)(B)(i) in support of excepting the debt from discharge.

    Collier on Bankruptcy discusses the interplay between state laws requiring reporting of changes on Federal tax returns and the application of 11 U.S.C. § 523(a)(1)(B)(i), succinctly stating:

> The reference to the failure to provide "notice" means that if a debtor is obligated under nonbankruptcy law to file an amended return or give notice to a governmental unit of an amendment or correction to a prior filed federal tax return,[47] the failure to do so will render nondischargeable any corresponding tax liability to the governmental unit.[48]

4 COLLIER ON BANKRUPTCY ¶ 523.07[3][a].

**California Law Requiring Notice of Federal Tax Change**

    Defendant-FTB cites to Revenue and Taxation Code § 18622(a), which sets forth the following requirement for a taxpayer to notify Defendant-FTB within six months of the final determination of changes of federal taxes.    Revenue and Taxation Code  § 18622(a) states [emphasis added]:

(a) **If any item required to be shown on a federal tax return, including any gross income**, deduction, penalty, credit, or tax **for any year of any taxpayer is changed or corrected by the Commissioner of Internal Revenue** or other officer of the United States or other competent authority, or **where a renegotiation of a contract or subcontract with the United States results in a change in gross income** or deductions, <u>that taxpayer shall report each change or correction</u>, or the results of the renegotiation, <u>within six months after the date of each final federal determination of the change</u> or correction or renegotiation, or as required by the Franchise Tax Board, **and shall concede the accuracy of the determination or state wherein it is erroneous**. For any individual subject to tax under Part 10 (commencing with Section 17001), changes or corrections need not be reported unless they increase the amount of tax payable under Part 10 (commencing with Section 17001) for any year.

The Parties have directed the court to Proof of Claim 2-1 filed by the Internal Revenue Service.  The IRS Form 410 Attachment to Proof of Claim 2-1 states that the 2012 and 2013 tax assessments were both made on June 20, 2017. See also, Statement of Undisputed Facts, Fact 18, Dckt. 35, which is admitted by Plaintiff-Debtor in the Response to Statement of Undisputed Facts, ¶ 18, Dckt. 47.

Defendant-FTB provides evidence that Plaintiff-Debtor did not provide the notice required by Revenue and Taxation Code § 18622(a) following the entry of the March 28, 2017 Decision of the Tax Court.  Dec., ¶ 15; Dckt. 33.  Plaintiff-Debtor disputes the Decision of the Tax Court, asserting that it was improperly computed, questions whether she signed the Petition filed with the Tax Court, and states that she does not recognize the signature of her name on the Stipulation attached to the Decision of the Tax Court.  However, Plaintiff-Debtor does not dispute that the Decision of the Tax Court exists and does not assert that the Tax Court Decision is a fabricated document.

As shown on the Plaintiff-Debtor's 2012 and 2013 Tax Returns, ¶ 13, (Exhibits 7, 8; Dckt. 37), computation of California Resident Income Tax begins with the federal adjusted gross income shown on the taxpayer's Federal income tax return for that tax year.[5]  The California Revenue and Taxation Code incorporates various Federal Tax Law definitions for California state

---

[5]  See text from Plaintiff-Debtor's 2012 California Tax Return, Exhibit 7; Dckt. 37:

**13** Enter federal adjusted gross income from Form 1040, line 37; 1040A, line 21; or 1040EZ, line 4 . . . . . . . . . . | **13** _____ **18,010** 00

1   income taxes, including: Gross income, Cal. Rev. Tax. §  17071; Adjusted gross income, *Id*.
2   § 17072; and Taxable income, *Id*. § 17073.

3       For the Tax Court Judgment at issue, it determines the correct amount to be stated as the
4   federal adjusted gross income on the Plaintiff-Debtor's 2012 and 2013 federal tax returns.  That
5   adjusted gross income amount is brought to the California tax return, not separately computed under
6   California law.

7       Additionally, this exact issue and the requirements of  Revenue and Taxation Code
8   § 18622(a) and its application to 11 U.S.C. § 523(a)(1)(B)(i) has been clearly addressed by the Ninth
9   Circuit Court of Appeals in *Berkovich v. Cal. Franchise Tax Bd. (In re Berkovich)*, 15 F.4th 997 (9th
10  Cir. 2021).  The Ninth Circuit Court of Appeals affirmed and adopted verbatim the Bankruptcy
11  Appellate Panel Decision, *Berkovich v. Cal. Franchise Tax Bd. (In re Berkovich)*, 619 B.R. 397 (9th
12  Cir. B.A.P. 2020).

13      The Bankruptcy Appellate Panel Decision is attached as an Appendix to the Ninth Circuit's
14  Decision.[6]  In *Berkovich*, the Ninth Circuit Court of Appeals concluded that failure to provide the
15  notice as required by Revenue and Taxation Code § 18622(a) rendered that tax debt
16  nondischargeable.

17      In *Berkovich*, Dennis Berkovich, the bankruptcy debtor, filed tax returns for the years 2003,
18  2004, and 2005. *Berkovich v. Cal. Franchise Tax Board*, 15 F.4th at 999.  However, in 2008 the IRS
19  subsequently assessed approximately $145,000.00 of additional federal income taxes against
20  Mr. Berkovich for the 2003, 2004 and 2005 tax years. *Id.*  The Franchise Tax Board subsequently
21  learned of the IRS' assessment from the IRS, and then the Franchise Tax Board assessed
22  Mr. Berkovich additional state income taxes totaling approximately $45,000.00 plus penalties and
23  interest for the relevant tax years. *Id.*

24      Then in 2012 Mr. Berkovich and his wife filed a Chapter 13 case.  Mr. Berkovich confirmed
25
26  ──────────────
27      [6] The court's citation to *Berkovich* Decision, and page number references, is to the Ninth Circuit
    Decision, including the citations to the Bankruptcy Appellate Panel Decision that is adopted and attached
28  as an addendum thereto, and not the page numbers for the original Bankruptcy Appellate Panel published
    Decision.

a Chapter 13 plan, which was performed over the next five years.  Through that Chapter 13 plan the Franchise Tax Board was paid less than $1,000.00 on its tax claim.  Mr. Berkovich and his wife were granted their Chapter 13 bankruptcy discharges upon completion of the Chapter 13 plan.  *Id*.

The following year the Franchise Tax Board filed a nondischargeability complaint seeking a judgment that the tax obligations to the Franchise Tax Board were nondischargeable under 11 U.S.C. § 523(a)(1)(B)(i),  "[b]ecause Mr. Berkovich failed to report the increased federal tax assessments to the Franchise Tax Board and failed to challenge the Franchise Tax Board's notices of proposed tax assessment." *Id*.  At the trial level the bankruptcy court granted summary judgment in favor of the Franchise Tax Board, "holding that the report required by RTC section 18622(a) is an "equivalent report" under § 523(a)(1)(B)(i), such that the increased state taxes are not dischargeable." *Id*.

The facts in *Berkovich* and the present Adversary Proceeding line up very closely: (1) State and Federal tax returns were filed, (2) the IRS assessed additional federal taxes based on a determination of the debtor having additional income, (3) the debtor did not report or give notice of change in the federal taxes to Defendant-FTB as required by  Revenue and Taxation Code § 18622(a), (4) Defendant-FTB learned of the additional taxable income from the IRS, (5) the debtor did not challenge the assessment of the additional taxes by Defendant-FTB, (6)  the debtor filed bankruptcy, and (7) the debtor was granted a discharge in the bankruptcy case.  Two differences are that it does not appear that the debtor in *Berkovich* asserted that there was an error in a Decision of the Federal Tax Court and in Berkovich it was the Franchise Tax Board that filed the complaint to obtain a determination that the increased tax obligations were not dischargeable as provided in 11 U.S.C. § 523(a)(1)(B)(i).

Beginning with an analysis, the Ninth Circuit Court of Appeals states with respect to the scope of 11 U.S.C. § 523(a)(1)(B)(i):

> We begin with the statutory language. "The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (citation omitted).

*Id*. at 1000.  As part of this analysis, the Ninth Circuit Court of Appeals discusses the final

17

unnumbered paragraph of 11 U.S.C. § 523(a), stating:

> Section 523(a) also provides, in the "hanging paragraph" at the end of the subsection:
>
>> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.
>
> § 523(a). In other words, a tax debt is nondischargeable if the debtor failed to file a required return or "equivalent report or notice[,]" where "return" is defined by "applicable nonbankruptcy law."

*Id*. at 1000-1001.

In determining that a taxpayer must notify the Franchise Tax Board of a change in the federal tax return, the Ninth Circuit begins with Revenue and Taxation Code § 18622(a), as is in issue in this Adversary Proceeding. Upon walking through the provisions of Revenue and Taxation Code § 18622(a), (b), and (c), the Ninth Circuit concluded:

> Thus, the plain language of § 523(a)(1)(B) precludes a discharge of the debtor's tax debt if he fails to file a "return, or equivalent report or notice, if required" by state law. The plain language of the applicable state statute requires that a taxpayer "report" to the [Franchise Tax Board] if the taxpayer receives notice of changes or corrections to his federal income tax. In this case, Mr. Berkovich did not file the "report" that state law required.

*Id*. at 1001. The Ninth Circuit provides a detailed review of a Fourth Circuit Decision addressing a Maryland statute requiring notice of changes in the federal taxes to the state. *Maryland v. Ciotti (In Re Ciotti)*, 638 F.3d 276 (4th Cir. 20911). In *Ciotti*, the IRS provided notice to the debtor that it was assessing additional taxes based on the IRS computing debtor having additional income. That debtor did not notify the Maryland taxing agency, but that taxing agency subsequently learned of the increase from the IRS. The Fourth Circuit concluded that the report of a change in the federal taxes required under state law was an "equivalent report or notice" specified in 11 U.S.C. § 523(a)(1)(B)(i), and the increased stated tax obligation was not dischargeable. *Berkovich v. Cal. Franchise Tax Board*, 15 F.4th at 1002.

The Ninth Circuit rejected the following arguments presented by Mr. Berkovich that the

1   provisions of 11 U.S.C. § 523(a)(1)(B)(i) had not been met:

2       A.   The report is not a "return" under § 523(a)(1)(B).

3               This argument ignores the fact that § 523(a)(1)(B) was amended in
        2005. Until 2005, § 523(a)(1)(B) covered only an unfiled "return," and not
4       an "equivalent report or notice." Mr. Berkovich's interpretation that the
        "report" must meet the definition of a "return would render the phrase
5       "equivalent report or notice" meaningless and superfluous. We must give full
        effect to each word in a statute. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31,
6       122 S.Ct. 441, 151 L.Ed.2d 339 (2001) ("It is 'a cardinal principle of
        statutory construction' that 'a statute ought, upon the whole, to be so
7       construed that, if it can be prevented, no clause, sentence, or word shall be
        superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S.
8       167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001))); *Satterfield*, 569 F.3d at
        953 ("Another 'fundamental canon of statutory construction [is] that the
9       words of a statute must be read in their context and with a view to their place
        in the overall statutory scheme.'" (quoting *FDA v. Brown & Williamson
10      Tobacco Corp.*, 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121
        (2000))). Thus, "equivalent report or notice" must be something other than
11      a "return." We agree with the [Franchise Tax Board] and the Fourth Circuit
        that the required report concerning the increased federal income tax
12      assessment is such an "equivalent report." Mr. Berkovich "fails to
        satisfactorily explain what sort of reports or notices Congress targeted with
13      its amendment if it was not the very sort that are the subject of this case." *In
        re Ciotti*, 638 F.3d at 280.

14

15  *Id*. at 1003-1004.

16      B.   The IRS's forwarding of the assessment to the Franchise Tax Board constituted an amended

17  "return" that satisfies § 523(a)(1)(B).

18

19              We reject his unsupported argument. *See In re Ciotti*, 638 F.3d at 281
        (rejecting a similar argument that the IRS's notification to the state relieved
20      the taxpayer of the duty to report the changed assessment). In any event, RTC
        section 18622(a) requires that the "taxpayer shall report each change or
21      correction . . . and shall concede the accuracy of the determination or state
        wherein it is erroneous." (Emphasis added.) Mr. Berkovich failed to report
22      the IRS's changes to the [Franchise Tax Board] and to concede or contest the
        accuracy of those changes.

23  *Id*. at 1004.

24      C.   Revenue and Taxation Code § 18622 requires an amended return only if he (the taxpayer)

25  had filed an amended return with the IRS.

26              This argument misstates the statute. RTC section 18622(b) [5] requires a
        taxpayer to file an amended state tax return if he files an amended federal tax
27      return, but it does not eliminate the taxpayer's responsibility to file the report
        in subsection (a). Nor does subsection (b) suggest that a report under
28      subsection (a) is not a "report or notice" under § 523(a)(1)(B).

5.      Subsection (b) provides that "[a]ny taxpayer filing an amended return with the Commissioner of Internal Revenue shall also file within six months thereafter an amended return with the Franchise Tax Board which shall contain any information as it shall require." Cal. Rev. & Tax. Code § 18622(b).

*Id*. at 1005.

Having determined the plain language of 11 U.S.C. § 523(a)(1)(B)(i); considered the applicable California law; reviewed the *Ciotti* Decision, Ninth Circuit lower court decisions, and Collier on Bankruptcy; and considered the legal arguments advanced; the Ninth Circuit concludes:

The report required under RTC section 18622(a) furnishes the state tax authority with information needed to ascertain the taxpayer's state tax liability. For purposes of § 523(a)(1)(B), the report is equivalent to a return, and the failure to file such a report excepts the tax debt from discharge.
. . .

The bankruptcy court did not err in granting the [Franchise Tax Board] summary judgment. The report required by RTC section 18622(a) is an "equivalent report or notice" under § 523(a)(1)(B). Mr. Berkovich does not dispute that he failed to file such report with the [Franchise Tax Board] following the IRS's assessment. Thus, his state tax debts for the relevant tax years are excepted from discharge under § 523(a)(1)(B). We AFFIRM.

*Id*. at 1003, 1005.

**Additional Arguments of Plaintiff-Debtor**
**Collaterally Attacking the Tax Court Decision**

Plaintiff-Debtor opposes the Motion for Partial Summary Judgment asserting that the Tax Court Decision is not proper.  It is asserted that the ex-husband's income was improperly attributed to Plaintiff-Debtor.  It is asserted that the IRS improperly computed the additional income, using only the gross income and not deducting the costs and expenses relating to the additional income. The IRS claim for this debt has been discharged, and Defendant-FTB is attempting to assert its tax claims on the same income.

Plaintiff-Debtor disputes that she signed the Petition filed in the Tax Court or that she signed the Stipulation attached to the Decision of the Tax Court.  Plaintiff-Debtor further disputes that she has had a trial on the merits in the Tax Court, and asserts that she has not been afforded her Due Process Rights.  Dec., ¶ 21; Dckt. 48.

The court has been presented with a certified copy of the Decision of the United States Tax

Court.  Exhibit 6; Dckt. 36.  Nothing has been presented to this court to indicated that this is a falsified document.   What the court has been presented with is a final Decision of the United States Tax Court.

Plaintiff-Debtor's arguments are to collaterally attack what has been presented to this court as a final Decision of the Tax Court.  The Bankruptcy Court is not a "super appellate court" empowered to correct errors of other judges, or a "specially enlightened court" that can ignore final judgments and decisions of other courts so as to come up with the "right result."

With respect to determination of tax liabilities, while jurisdiction generally exists for bankruptcy judges to determine tax claims, in 11 U.S.C. § 505 Congress has put in some firm guardrails for the exercise of such jurisdiction.  11 U.S.C. § 105(a) provides (emphasis added):

§ 505. Determination of tax liability

(a)

(1) **Except as provided in paragraph (2)** of this subsection, <u>the court may determine the amount or legality of any tax, any fine or penalty relating to a tax,</u> or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) **The court may not so determine**—

    (A) the **amount or legality of a tax**, fine, penalty, or addition to tax **if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title**;

    (B) any right of the estate to a tax refund, before the earlier of—

        (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

        (ii) a determination by such governmental unit of such request; or

    (C) the amount or legality of any amount arising in connection with an *ad valorem* tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired.

In this Adversary Proceeding, Plaintiff-Debtor asserts that she has not had the opportunity to contest the assessment of the taxes, which were based on a determination that Plaintiff-Debtor had additional income from the husband's business.  However, the certified Decision of the Tax Court

1    and the Petition to the Tax Court are to the contrary.

2          The limitation imposed in 11 U.S.C. § 505(a)(2)(A) on the bankruptcy court's jurisdiction

3    to determine tax claims is discussed in 11 Collier on Bankruptcy, Sixteenth Edition, P TX5.04

4    (emphasis added)[7]:

5          [2] Section 505(a)

6          [a] Jurisdiction of the Bankruptcy Court

7          As noted in the legislative history, the jurisdictional grant contained in section 505(a)
     is derived, with only stylistic changes, from section 2a(2A) of the former Bankruptcy
8          Act.[6] Evidently Congress intended the language of section 505(a) to be sufficiently
     broad to include virtually any type of tax liability, and section 505(a) expressly
9          includes unpaid taxes even after they have been assessed. At least one court has held
     that section 505 does not provide a basis for the court, under the guise of equitable
10         relief, to excuse a tax debt lawfully owed by the debtor.[6a] Although the United States
     and its agency, the Internal Revenue Service, are immune from suit except where
11         Congress waives that immunity, section 505 of the Bankruptcy Code allows the court
     to determine the tax liability of a debtor.[7] **Section 505(a) imposes only two**
12         **significant limitations on the bankruptcy court's jurisdiction to determine**
     **federal tax liabilities.[8] They are (i) the prohibition against determining (or**
13         **redetermining) a tax liability contested and adjudicated before a judicial or**
     **administrative tribunal of competent jurisdiction before the commencement of**
14         **the case under title 11,**[9] and (ii) the requirement that there be an actual controversy
     based upon a filed tax return.[10] **When the Tax Court has entered a decision, even**
15         **a stipulated decision, prior to the filing of a petition under title 11, bankruptcy**
     **courts lack jurisdiction to relitigate tax liabilities for the years before the Tax**
16         **Court.**[11]   The prohibition against the relitigation of federal tax liabilities in
     bankruptcy court is consistent with the practice regarding state and local tax
17         liabilities.[12]

18         In *Baker v. IRS (In re Baker)*, 74 F.3d 906 (9th Cir. 1996), the Ninth Circuit Court of

19   Appeals addressed this jurisdictional issue arising under 11 U.S.C. § 505(a)(2)(A). In Baker, the

20   Internal Revenue Service assessed tax liability against Mr. and Mrs. Baker (the "Bakers") arising

21   from a fraudulent tax shelter that the Bakers had invested in. The Bakers filed a petition in the Tax

22   Court. While the petition was pending, the Internal Revenue Service proposed a settlement, which

23   the Bakers accepted, and a Tax Court judgment was entered. The Tax Court judgment determined,

24   pursuant to the stipulation of the Bakers and the IRS, the increased tax obligation that Bakers owed

25   for their federal taxes. There was no active litigation in the Tax Court by *Baker. Baker v. IRS (In*

26

27

28         [7] The court has included the footnote number in the text quoted from Collier's for the ease of any
     reader who is seeking to read the cases and authorities upon which these statements are made.

1  *re Baker)*, 74 F.3d at 909.

2       Baker subsequently filed a Chapter 13 bankruptcy case, in which the IRS filed a proof of

3  claim for ($174,182.63). Baker objected to the IRS claim, with the Bankruptcy Court overruling the

4  objection, concluding that it lacked jurisdiction to adjudicate the objection in light of the Tax Court

5  decision and 11 U.S.C. § 523(a)(2)(A). *Id*. at 909.

6       The Ninth Circuit first acknowledged the jurisdiction of a bankruptcy court to adjudicate tax

7  claims, but stated:

8
9       [t]his power is limited by 11 U.S.C. § 505(a)(2)(A), which bars bankruptcy courts
        from determining "the amount or legality of a tax . . . if such amount or legality was
        contested before and adjudicated by a judicial or administrative tribunal of
10      competent jurisdiction" before commencement of the bankruptcy proceeding.

11  *Id*.

12       Baker argued that since there was not a contested proceeding in which the "amount or

13  legality" of the tax debt was not "contested" or "adjudicated," given that the Tax Court petition was

14  resolved by stipulation, the provisions of 11 U.S.C. § 502(a)(2)(A) did not apply in their bankruptcy

15  case to the IRS claim. *Id*.

16       The Ninth Circuit did not find this argument persuasive. With respect to the Tax Court

17  judgment, the Ninth Circuit concluded:

18       On its face, the Tax Court judgment establishes the *amount* of tax owed, and we
         agree with the Fifth Circuit's conclusion that an assessment of the amount owed
19       "presupposes the legality of that assessment." *IRS v. Teal (Matter of Teal)*, 16 F.3d
         619, 621 (5th Cir. 1994). Nor are we persuaded by the Bakers' contention that the
20       claims were not "contested" and "adjudicated" within the meaning of the statute.
         According to § 505(a)(2)'s legislative history, a proceeding is contested if, prior to
21       the bankruptcy filing, the debtor had filed a petition in the Tax Court and the IRS had
         filed an answer. *See* 124 Cong. Rec. 32250, 32413 (Sept. 28, 1978) (statement of
22       Rep. Edwards). This definition has been adopted by the few courts that have
         considered the issue, and we see no reason to depart from it. *See Matter of Teal, 16*
23       *F.3d at 621 n.4*; *Richcreek v. IRS,* 1988 U.S. Dist. LEXIS 17335, 1988 WL 81527,
         at * 3 (S.D. Ind., Mar. 22, 1988). The Tax Court "adjudicated" the Bakers' tax
24       liability when it entered judgment against them. A matter is adjudicated "when a
         'judgment of a court of competent jurisdiction' has been decreed." *Matter of Teal*, 16
25       F.3d at 621 (quoting Black's Law Dictionary 42 (6th ed. 1990)). The Bakers argue
         a stipulated judgment is not an adjudication because it is not a decision "reached
26       based upon evidence presented to the court." We decline to adopt this view. If the
         statute were read as the Bakers suggest, the IRS would be forced to fully litigate all
27       Tax Court cases to foreclose petitioners from relitigating their tax liability in
         bankruptcy court. Section 505(a)(2)(A)'s legislative history makes it clear that no
28       such result is required. A case not tried on the merits can nonetheless be

1   "adjudicated" within the meaning of the statute. *See* 124 Cong. Rec. 32250, 32413

2   (Sept. 28, 1978) (statement of Rep. Edwards) (provided a petition and answer were
    filed in Tax Court, a subsequent default judgment bars bankruptcy courts from

3   relitigating the debtor's tax liability). Because the Bakers' tax liability was contested
    before and adjudicated by a court of competent jurisdiction, § 505(a)(2)(A) applies.

4   *Id*. at 909-910.

5          Similar to arguments advanced by Plaintiff-Debtor in this Adversary Proceeding, the Bakers

6   argued that on equitable grounds the bankruptcy court should be able to grant equitable relief under

7   Federal Rule of Civil Procedure 60(b) to allow the Bakers to adjudicate the merits of the tax dispute.

8   The Ninth Circuit, finding this argument did not have merit, states:

9           We also reject the Bakers' argument that, even if § 505(a)(2)(A) applies, the statute
            should not preclude a court from granting equitable relief under Fed. R. Civ. P.
10          60(b). Section 505(a)(2)(A) is a jurisdictional statute that deprives bankruptcy courts
            of authority to decide a category of claims. *Matter of Teal*, 16 F.3d at 622. By
11          enacting a statute that is jurisdictional in nature, "Congress did not leave bankruptcy
            courts the discretion to disregard tax court adjudications and concomitantly seize
12          jurisdiction out of equitable concerns." *Id.* Although the Bakers' situation is
            unfortunate, they may not use Rule 60(b) to override the Bankruptcy Court's
13          jurisdictional limitations.

14  *Id*. at 910.

15
    **Granting Motion for Partial Summary Judgment**
16  **for Defendant-FTB on the First Claim For Relief**

17         For the First Claim for Relief, based on established Ninth Circuit Authority, partial summary

18  judgment is granted for Defendant-FTB, and against Plaintiff-Debtor on First Claim for Relief from

19  the Complaint because there is no genuine issue of material fact. The court finds *Berkovich v. Cal.*

20  *Franchise Tax Bd. (In re Berkovich)*, 15 F.4th 997 (9th Cir. 2021), to which the adopted Bankruptcy

21  Appellate Panel Decision in *Berkovich v. Cal. Franchise Tax Bd. (In re Berkovich)*, 619 B.R. 397

22  (9th Cir. B.A.P. 2020) is attached as an appendix, to be on point.

23         The facts in our case are nearly identical to those in *Berkovich.* Here, it is uncontested

24  Plaintiff-Debtor failed to report to the IRS changed in its tax returns for the years 2012 and 2013.

25  Plaintiff-Debtor asserts she was never made aware of the requirement for her to report tax changes

26  pursuant to Revenue and Taxation Code § 18622(a), and so her due process rights have been

27  violated. That is not the case. Plaintiff-Debtor received notices of the change in her tax

28  assessments, and so it became her responsibility to report the changes to the IRS by operation of

state law.  Plaintiff-Debtor's due process argument is without merit.

Additionally, Debtor argues that because Defendant-FTB received notice from the IRS, her reporting requirement has been alleviated.  The Ninth Circuit has directly ruled on this same issue in *Berkovich*, the debtor in that case asserting a similar argument.  It is the Plaintiff-Debtor who is required to report the tax changes, not the IRS.  According to established caselaw in *Berkovich*, Debtor failing to make the reporting requirements pursuant to Revenue and Taxation Code § 18622(a) violates 11 U.S.C. § 523(a)(1)(B)(i).  As 11 U.S.C. § 523(a) is written in the disjunctive, it makes no difference that Defendant-FTB's claim is outside the time limits prescribed in 11 U.S.C. § 523(a)(1)(B)(ii), contrary to Plaintiff-Debtor's assertion.

As addressed above, the computation of the California income taxes for the 2012 and 2013 tax years begin with the adjusted gross income from line 4 of the Federal tax returns for those years. While Plaintiff-Debtor would like to litigate that now with Defendant-FTB, such a fight would be between the Plaintiff-Debtor and the IRS in the Federal Tax Court proceeding in which the Tax Court Judgment was entered.  Plaintiff-Debtor has not shown the court for the issues presented with respect to the First Claim for Relief any basis by which Plaintiff-Debtor can litigate with Defendant-FTB in Bankruptcy Court to achieve an adjusted gross income on line 13 of the California State tax return that is different from the gross income on line 4 of the Federal tax return.[8]

Exhibit 9 provided by Defendant-FTB are certified Account Transcripts from the IRS which include the adjusted gross income amounts for Plaintiff-Debtor's 2012 and 2013 tax years. Dckt. 37. These Account Transcripts are dated June 19, 2018, more than a year after the entry of the Tax Court Judgment in March 2017 (Exhibit 6; Dckt. 36).  The Plaintiff-Debtor's adjusted gross income for her 2012 Federal tax return is $1,396,780.00 and for her 2013 Federal tax return is $3,070,092.00. These are the numbers placed on Line 13 of the 2012 and 2013 California State tax returns for Plaintiff-Debtor.

Partial summary judgment is granted for Defendant-FTB and against Plaintiff-Debtor on the

---

[8] See Footnote 4 above, and Exhibits 7 and 8, Dckt. 37, which are copies of the Plaintiff-Debtor's 2012 and 2013 California tax returns that require the federal adjusted gross income from the Federal 1040 tax returns to be entered on line 13 of the State tax return.

First Claim for Relief, with judgment to be entered that the Plaintiff-Debtor California State Tax Obligations assessed by the California State Franchise Tax Board for tax years 2012 and 2013 are nondischargeable as provided in 11 U.S.C. § 523(a)(1)(B)(i).

The granting of partial summary judgment on the First Claim for Relief is without prejudice to the Plaintiff-Debtor seeking to have the Federal Tax Court Judgment vacated, amended, corrected, or otherwise adjusted, and then Debtor seeking to have the California income taxes assessed for the 2012 and 2013 tax years amended, corrected, or otherwise adjusted to take into account changes to the adjusted gross income from Plaintiff-Debtor's federal tax returns for those years which is used for computation of Plaintiff-Debtor's taxable income for 2012 and 2013.[9]

### THIRD CLAIM FOR RELIEF
### TO DETERMINE NATURE, EXTENT, AND VALIDITY OF SECURED CLAIM

Count three prays the court either determine Defendant-FTB's claim is not secured, or to determine that the IRS' assessment as decided by the Tax Court, which the Defendant-FTB used to assess its own taxes, is not valid, and so the Defendant-FTB has no claim in the case. As an initial matter, the court cannot value Defendant-FTB's secured claim in the context of 11 U.S.C. § 506(a) in this Chapter 7 Case. *See* Supreme Court's ruling in *Bank of America, N.A. v. Caulkett*, 575 U.S. 790, 797 (2015).

At its core, the Third Claim for Relief appears to rely on the premise that the Defendant-FTB's claim should be disallowed as it relied on the IRS' assessment, and the IRS' assessment was improperly conducted, improperly assessing Mr. Arredondo's tax liability against Plaintiff-Debtor. Moreover, Mr. Arredondo's tax liability was improperly assessed even against him, failing to include deductions for the costs of operating the business and other related tax deductions.

The glaring issue with these theories is that the court has been presented with a final judgment from the Tax Court against Plaintiff-Debtor, naming her in the judgment, and assessing her tax liabilities. Plaintiff-Debtor filed a Tax Court Petition on May 10, 2016. Ex. 4; Dckt. 36.

---

[9] At the hearing the court questioned Plaintiff-Debtor's counsel whether relief from the Tax Court Judgment would be sought in the Tax Court. Counsel indicated that they were now addressing such possible relief.

Plaintiff-Debtor sets forward in the Tax Court Petition some of the exact same allegations now set

before the court in this Adversary Proceeding, stating:

> 5. Explain why you disagree with the IRS determination in this case (please list each
> point separately):
>
> I WAS ASSESSED A TAX THROUGH EXAMINATION BASED ON AMOUNTS
> FROM AUTO SALES. THE AUTO SALES DID NOT INCLUDE THE COST OF
> GOODS SOLD AND OR THE BASIS OF THE AUTO SALES. SINCE THE
> EXAMINER DID NOT INCLUDE THE COST OF GOODS SOLD OR BASIS,
> THE DEFICIENCY FOR THE AMOUNT OWED IS OVERSTATED. IF THE
> COST OF THE AUTO SALES IS APPLIED, THE TAX AMOUNT WOULD BE
> MORE ACCURATE AND THE TAX AMOUNT WOULD BE A FAIR AMOUNT
> OF TAX OWED.
>
> 6. State the facts upon which you rely (please list each point separately):
>
> THE TAX YEARS OF 2012 AND 2013 WERE ASSESED [sic] WITHOUT THE
> COST OF AUTO SALES.

Exhibit 4, Tax Court Petition §§ 5, 6; Docket 36 (Emphasis in original).  That Tax Court Petition

litigation ended in a Stipulated Decision from the United States Tax Court. *See* Ex. 6, Docket 36.

The Stipulated Decision, which purports to be signed by Plaintiff-Debtor, states:

> That there are deficiencies in income tax due from the petitioner for the taxable years
> 2012 and 2013 in the amounts of $474,131.00 and $1,195,486.00, respectively;
>
> That there are additions to tax due from the petitioner for the taxable years 2012 and
> 2013 under the provisions of I.R.C. § 6651(a) (1) in amounts of $105,427.13 and
> $267,733.80, respectively; and
>
> That there are additions to tax due from the petitioner for the taxable years 2012 and
> 2013 under the provisions of I.R.C. §6651(a) (2) in amounts of $79,656.05 and
> $130,892.08, respectively.

*Id.*

Plaintiff-Debtor asserts in her Declaration at Docket 48 that she has never seen nor signed

these documents. Decl. ¶¶ 11, 13, Docket 48. Plaintiff-Debtor also testifies that she believes her

Due Process rights have been violated because she was not given a notice of having to provide the

notice to the Defendant-FTB.  In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559

U.S. 573, 581-582 (2010), the Supreme Court repeats the long held principle concerning knowledge

of the law, stating:

> We have long recognized the "common maxim, familiar to all minds, that ignorance

of the law will not excuse any person, either civilly or criminally." *Barlow v. United States*, 32 U.S. 404, 7 Pet. 404, 411, 8 L. Ed. 728 (1833) (opinion for the Court by Story, J.); *see also Cheek v. United States*, 498 U.S. 192, 199, 111 S. Ct. 604, 112 L. Ed. 2d 617 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system").

In essence, Plaintiff-Debtor is asking this court to relitigate what has already been decided. It is true that the judgment presented is for the IRS' claim; however, Defendant-FTB has provided testimony showing the process by which the Defendant-FTB assesses its taxes relying directly on the IRS information. Plaintiff-Debtor herself is contesting the validity of the IRS judgment, the IRS judgment being the basis for the Defendant-FTB's claim.

In this Adversary Proceeding, this bankruptcy court is not the proper forum for such an endeavor seeking a counter ruling to a Judgment issued by the Federal Tax Court. If Plaintiff-Debtor has issues with the Tax Court's ruling, perhaps arguing she never received notice of that suit and the documents were forged, Plaintiff-Debtor is free to pursue relief from the Tax Court Judgment from the Federal Tax Court, including a determination that the order is void pursuant to Fed. R. Civ. P. 60. Moore's Treatise states on proper judicial court for such a motion:

**Motion Must Usually Be Filed in District Court That Rendered Judgment**

Nothing in any portion of Rule 60 addresses the particular court in which a party should file a Rule 60(b) motion for relief from a judgment, order, or proceeding. Because a Rule 60(b) motion presupposes the existence of a prior federal court judgment, order, or proceeding, however, it is clear that the drafters of the rule contemplated that the motion (as opposed to an independent action in equity that may be brought anywhere, see § 60.84) would always be brought "in the court and in the action in which the judgment was rendered." The few courts that have considered the question agree that the court that rendered the judgment is the court in which the Rule 60(b) motion for relief from that judgment should be filed.

This rule makes perfect sense. The court that rendered the judgment is in the best position to judge the equities as to whether it should be set aside. Furthermore, the court that rendered the judgment has automatic jurisdiction over a motion to set it aside (see § 60.61).

12 James Wm. Moore et al., Moore's Federal Practice - Civil § 60.60[1].

By operation of law, Defendant-FTB's claim as it stands is secured. California law provides there is a 60-day window to contest a tax assessment. Cal. Rev. & Tax. Code § 19041. If the assessment is not challenged, it becomes final and then due and payable. Cal. Rev. & Tax. Code §§

19042 & 19049. Pursuant to Revenue and Taxation Code § 19221, when a tax assessment has become due and payable, it automatically creates a statutory state tax lien.[10]

Such tax lien encumbers the Plaintiff-Debtor's real and personal property, including the real property commonly know as 2201 Dale Avenue Ceres, California.[9]

Defendant-FTB includes as an attachment to its Proof of Claim 5-1 a statement that it has recorded with the Stanislaus County Recorder Notices of Tax Liens for the 2012 and 2013 tax years. POC 5-1, p. 5. It is stated that the Tax Liens were recorded on May 15, 2019. However, Defendant-FTB has not attached copies of the recorded tax liens to Proof of Claim 5-1 or as an exhibit in support of the Motion for Partial Summary Judgment. Plaintiff-Debtor does not dispute that Defendant-FTB recorded its Tax Liens, but argues that the IRS tax lien is senior, thus that wipes out Defendant-FTB's Tax Liens. Opp. P&As, p. 5:20-25; Dckt. 51. As addressed above, the United States Supreme Court has concluded that the Bankruptcy Code does not allow for the avoidance of liens in Chapter 7 based on an 11 U.S.C. § 506(a) valuation that there is no value in the collateral for the junior lien.

The court is not presented with a genuine issue of material fact as to Third Claim for Relief. The State tax obligations for 2012 and 2013 exist, and California law provides for there being a statutory lien on Plaintiff-Debtor's assets that secured such tax obligations.

Therefore, partial summary judgment is granted Defendant-FTB and against Plaintiff-Debtor on the Third Claim for Relief, determining that Defendant-FTB is a creditor with a secured claim for the 2012 and 2013 tax obligations of Plaintiff-Debtor pursuant to California Law. The court not having been presented with evidence of the actual recorded lien, the court can only generally state that any such prepetition tax liens that arise under California law are not void, but cannot identify a specific lien and that the lien has been perfected.

---

[10] Revenue and Taxation Code § 19221(a) states that for a taxpayer who has failed to pay their personal income taxes at the time it comes due and payable, "the amount thereof. . .shall thereupon be a perfected and enforceable state tax lien." The State tax lien attaches to all property of the delinquent taxpayer. Cal. Gov. § 7170(a). However, specific exceptions are stated who acquire an interest in real property of the delinquent taxpayer prior to the recording of the notice of state tax lien. *Id.*; § 7170(c). There are additional exceptions provided for persons who acquire interests in the delinquent taxpayer's personal property.

The court shall issue a separate order granting Defendant-FTB partial summary judgment on the First and Third Claims for Relief in the Complaint.

**Dated:** May 21, 2025

**By the Court**

Ronald H. Sargis, Judge
United States Bankruptcy Court

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| Debtor(s) / Plaintiff-Debtor(s) | Attorney(s) for the Debtor(s) <br><br> Attorney(s) for Plaintiff-Debtor(s) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee <br> Robert T. Matsui United States Courthouse <br> 501 I Street, Room 7-500 <br> Sacramento, CA 95814 |
| **Attorney(s) for the Trustee** (if any) | Donny P. Lee, Esq. <br> 300 S. Spring Street, Ste. 1702 <br> Los Angeles, CA 90013 |